IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HECTOR HUERTAS, ) | |
|     Plaintiff, ) | Civil Action No. 09-139 Erie |
| ) | |
| v. ) | |
| ) | District Judge Sean J. McLaughlin |
| RAYMOND J. SOBINA, et al., ) | Magistrate Judge Susan Paradise Baxter |
|     Defendants. ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I.   RECOMMENDATION

It is respectfully recommended that the Defendants' motion to dismiss [Document # 17] be granted as to Defendants Sobina and Varner. The Clerk of Courts should be directed to terminate Defendants Sobina and Varner from this action. The Defendants' motion to dismiss also should be granted with respect to Plaintiff's Fourteen Amendment procedural due process claim. The motion should be denied as to Defendant Henry and as to his exhaustion and Eleventh Amendment immunity arguments.

It is further recommended that Plaintiff's motion for partial summary judgment [Document # 23] be denied.

A Case Management Order will be issued separately.

### II.   REPORT

    **A.**     **Relevant Procedural History**

In June 2009, Plaintiff Hector Huertas, a state prisoner who at the time giving rise to this suit was incarcerated at the State Correctional Institution in Albion, Pennsylvania ("SCI-Albion"), commenced this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. First, he alleges that on three separate occasions (January 29, 2008, February 7, 2008, and August 12, 2008) Defendant Dan Henry, the mailroom supervisor at SCI-Albion, opened, read, and returned

1

to him letters that he had written to his bank. Document # 4, ¶¶ 9-20. This, Plaintiff claims, constituted a violation of his First Amendment rights. Id., ¶ 66. Second, Plaintiff alleges that Defendant Henry violated the Department of Corrections' policy when he read and returned his outgoing mail without first receiving the necessary authorization and providing him with the proper notice. Id., ¶¶ 21-25. This, Plaintiff claims, constituted a violation of the Fourteenth Amendment's Due Process Clause. Id., ¶ 66. Third, Plaintiff alleges that in response to his complaints Defendant Henry unlawfully retaliated against him for filing grievances by interfering with and taking contents from his mail. Id., ¶¶ 34-48, 67. Fourth, Plaintiff claims that Defendants Raymond J. Sobina, the Superintendent of SCI-Albion, and Dorian Varner, the Chief Secretary of Inmate Grievances, violated his First Amendment rights by failing "to act, intervene, [and] correct [Defendant Henry's] wrong and personally consent[ing] to the actions by acquience [sic]." Id., ¶ 68; see also id., ¶¶ 44-55.

Defendants have filed a motion to dismiss. Document # 17. Plaintiff has filed a brief in opposition. Document # 20. Plaintiff also has filed a motion for partial summary judgment against Defendant Henry. Document # 23.

### B. Standards Of Review
#### 1. *Pro se* pleadings

*Pro se* pleadings, "however inartfully pleaded,"must be held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520-521 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 647 (7th Cir. 1992); Freeman v. Dep't of Corr., 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules,

during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir. 1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) (discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990) (same). Because Plaintiff is a *pro se* litigant, this Court may consider facts and make inferences where it is appropriate.

### 2. Motion to dismiss pursuant to 12(b)(6)

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Erickson v. Pardus, 551 U.S. 89, 94 (2007). A complaint must be dismissed pursuant to Rule 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) (rejecting the traditional 12(b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). See also Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S.Ct. 1937 (2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

The Court need not accept inferences drawn by Plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S. 265, 286 (1986). See also McTernan v. City of York, Pennsylvania, 577 F.3d 521, 531 (3d Cir. 2009) quoting Iqbal, ___ U.S. at ___, 129 S.Ct. at 1949 ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). A plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing'

3

rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, Docket No. 07-cv-528, 2008 WL 482469 at *1 (D.Del. Feb. 22, 2008) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Phillips, 515 F.3d at 234, quoting Twombly, 550 U.S. at 556 (internal quotations omitted).

Recently, the United States Court of Appeals for the Third Circuit expounded on the Twombly/Iqbal/Phillips line of cases:

> To prevent dismissal, all civil complaints must now set out sufficient factual matter to show that the claim is facially plausible. This then allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct.
>
> * * *
>
> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. **First, the factual and legal elements of a claim should be separated. The district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief. In other words, a complaint must do more than allege the plaintiff's entitlement to relief.** A complaint has to show such an entitlement with its facts. As the Supreme Court instructed in Iqbal, where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not shown - that the pleader is entitled to relief. This plausibility requirement will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

Fowler v. UPMC Shadyside, 578 F.3d. 203, 210-11 (3d Cir. 2009) (internal quotations and citations omitted) (emphasis added).

### 3. Motion for summary judgment pursuant to Rule 56

Federal Rule of Civil Procedure 56(c)(2) provides that summary judgment shall be granted if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Rule 56(e) further provides that when a motion for summary judgment is made and supported, "an opposing party may not rely merely on allegations or denials in its own

pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact. See Fed.R.Civ.P. 56(c); Krouse v. American Sterilizer Co., 126 F.3d 494, 500 n.2 (3d Cir. 1997). The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Country Floors, Inc. v. Partnership Composed of Gepner and Ford, 930 F.2d 1056, 1061 (3d Cir. 1990). Further, "[R]ule 56 enables a party contending that there is no genuine dispute as to a specific, essential fact 'to demand at least one sworn averment of that fact before the lengthy process of litigation continues.'" Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990) quoting Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871 (1990).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-61 (3d Cir. 1989) (the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (*i.e.*, depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322; Country Floors, 930 F.2d at 1061.

A material fact is a fact whose resolution will affect the outcome of the case under applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Although the court must resolve any doubts as to the existence of genuine issues of fact against the party moving for summary judgment, Rule 56 "does not allow a party resisting the motion to rely merely upon bare assertions, conclusory allegation or suspicions." Firemen's Ins. Co. of Newark, N.J. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982). Summary judgment is only precluded if the dispute about a

5

material fact is "genuine," *i.e.*, if the evidence is such that a reasonable jury could return a verdict for the non-moving party. <u>Anderson</u>, 477 U.S. at 247-49.

### C. Defendants' Motion To Dismiss
#### 1. Failure to sufficiently allege personal involvement

Each Defendant argues that he/she should be dismissed from this case because Plaintiff has failed to allege his/her personal involvement and therefore has failed to state a claim upon which relief can be granted. The Court agrees with respect to Defendants Sobina and Varner.

The Court of Appeals has held that a civil rights complaint is adequate where it states the conduct, time, place, and persons responsible. <u>Evancho v. Fisher</u>, 423 F.3d 347, 353 (3d Cir. 2005) (citations omitted). When a supervisory official is sued in a civil rights action, liability can only be imposed if that official played an "affirmative part" in the complained-of misconduct. <u>Chinchello v. Fenton</u>, 805 F.2d 126, 133 (3d Cir. 1986). Although a supervisor cannot encourage constitutional violations, he or she has "no affirmative constitutional duty to train, supervise or discipline so as to prevent such conduct." <u>Id.</u> The supervisor must be personally involved in the alleged misconduct. <u>Evancho</u>, 423 F.3d at 353 ("Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."); <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988) ("Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity."). Importantly, § 1983 liability cannot be predicated solely on *respondeat superior*. <u>Evancho</u> at 353, <u>quoting</u> <u>Rode</u>, 845 F.2d at 1207.

##### a. Defendants Sobina and Varner

Plaintiff does not allege in the Complaint that Defendants Sobina and Varner personally interfered with his mail or retaliated against him. Rather, each of them is sued only in a supervisory capacity and/or as someone who reviewed or responded to Plaintiff's grievances and other complaints. Specifically, Plaintiff alleges that Defendant Sobina violated his First Amendment rights because once he became aware of Defendant Henry's alleged misconduct

6

through the grievance process, "he did nothing to stop it, correct it, or prevent the violation from happening." Document 4, ¶ 48. See also id., ¶¶ 45-49, 68. Plaintiff contends that Defendant Sobina "personally became involved" when he denied his grievances "and stated there were no constitutional violations in Henry's action[,]" thereby "consent[ing] to [Defendant Henry's] acts[.]" Id.; see also id., ¶ 49 (Defendant Sobina's awareness "makes him involve[d] by his consent to the acts and acquience [sic].").  Plaintiff makes similar allegations against Defendant Varner.  He contends that she "did nothing to stop Henry from" interfering with his mail after he complained to her.  Id., ¶ 52.  See also id., ¶ 51-55, 68.  According to Plaintiff, Defendant Varner is liable to him because she "did nothing to correct the wrong, compensate Plaintiff for the wrong, or remedy the wrong done by Henry[.]" Id., ¶ 55.

Even accepting Plaintiff's allegations to be true, they are insufficient to render Defendants Sobina and Varner liable, as knowledge after the fact and any actions or inactions taken after Defendant Henry's alleged misconduct cannot be said to be the "cause" of a First Amendment violation. A supervisory official's complained-of misconduct cannot be merely a failure to act. See Commonwealth v. Porter, 659 F.2d 306, 336 (3d Cir. 1981). "If a grievance official's only involvement is investigating and/or ruling on an inmate's grievance after the incident giving rise to the grievance has already occurred, there is no personal involvement on the part of that official." Murray v. Ennis, Docket No. 1:08-cv-264, 2010 WL 486301 at *13 (W.D. Pa. Feb. 5, 2010) (citing Rode, 845 F.2d at 1208). See also Caldwell v. Beard, Docket No. 2:07-cv-727, 2008 WL 2887810 at *4 (W.D.Pa. July 23, 2008) ("Such a premise for liability [*i.e.*, for performing a role in the grievance process] fails as a matter of law."), aff'd, 324 F.App'x 186 (3d Cir. 2009); Jefferson v. Wolfe, Docket No. 1:04-cv-44, 2006 WL 1947721 at *17 (W.D.Pa. July 11, 2006) (prison officials' concurrence in the administrative remedies process does not state an actionable claim under § 1983).

This is true notwithstanding Plaintiff's contention that Defendants Sobina and Varner had "knowledge of" and "acquiesced to" Henry's alleged misconduct, which the Court takes to be an apparent reference to Evancho v. Fisher, 423 F.3d 347 (3d Cir. 2005) and Rode v. Dellarciprete, 845 F.2d 1195 (3d Cir. 1988). The language from Evancho and Rode, requiring "knowledge and

7

acquiescence," requires knowledge that occurs contemporaneously with the violation, and not after the violation has been completed, so that failure to act can properly be called acquiescence in the violation. Evancho, 423 F.3d at 353 ("Her amended complaint likewise does not contain even a remote suggestion that Attorney General Fisher had contemporaneous, personal knowledge of her transfer and acquiesced in it."); Smith v. Hewitt, Docket No. 01:07-cv-35, 2008 WL 686903 at *4 (W.D.Pa. Mar. 10, 2008) ("Here, Plaintiff alleges that these six Defendants did nothing to remedy the situation after they became aware of it. This allegation, even taken as true, does not rise to the level of 'actual knowledge and acquiescence' as that term includes a component of contemporaneousness not alleged here. Plaintiff only alleges that these Defendants did nothing after they became aware of the alleged assault and that allegation fails to rise to the level of a constitutional violation.") (footnote omitted); Hughes v. Eitner, Docket No. 2:05-cv-463, 2007 WL 2597901 at *5 (W.D.Pa. Sept. 5, 2007) (same). The mere hypothesis that an official is personally involved in complained of conduct "simply because of his [supervisory] position" is an insufficient basis for finding § 1983 liability. Id. (allegations of personal liability on the part of the state Attorney General were insufficient where plaintiff did not specifically allege that the Attorney General had ordered the acts of his "underlings," or had acquiesced to those acts with *contemporaneous* knowledge of them.); Bullock v. Horn, Docket No. 99-cv-1402, 2000 WL 1839171 at *5 (M.D. Pa., Oct. 31, 2000) (noting that the plaintiff's allegations regarding the defendants were limited to conclusory statements-such as bare claims that the defendant "acquiesced in" and "enforced" the challenged actions-and to claims that Plaintiff sent them various letters informing them of his grievances and requesting assistance. "Merely asserting that Plaintiff sent letters to these two defendants will not suffice. Indeed, it would be anomalous to suggest that a prisoner could name as a Defendant any governmental official whatsoever, no matter how far removed in the chain of authority from the actual conduct in question, simply by sending that official a letter.").

In sum, Plaintiff's allegations against Defendants Sobina and Varner fail to establish their personal involvement in the challenged conduct and are insufficient to state a cognizable claim under § 1983. As a result, the motion to dismiss should be granted as to them and they should be

dismissed from this case.

### b. Defendant Henry

Defendant Henry also argues that he should be dismissed from this action because Plaintiff has failed to allege facts sufficient to show his personal involvement. The Court does not agree. Plaintiff's allegations that Defendant Henry personally interfered with his mail and retaliated against him are sufficient to withstand a motion to dismiss. Document # 4, ¶¶ 6-43. Accordingly, Defendants' motion to dismiss Defendant Henry for lack of personal involvement should be denied.

### 2. Exhaustion

Defendants argue that the Complaint should be dismissed because Plaintiff failed to exhaust his administrative remedies against each of them. See 42 U.S.C. § 1997e(a) ("[n]o action shall be brought with respect to prison conditions under [§ 1983] or any other Federal Law, by a prisoner ... until such administrative remedies as are available are exhausted."). In support of this argument, they have attached to their motion a number of grievances that Plaintiff filed concerning complaints he had about the handling of his outgoing and/or incoming mail.[1] Document # 18, Exs. B-G. Rule 12(d) of the Federal Rules of Civil Procedure provides that "[i]f, on a motion under Rule 12(b)(6), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to that motion." Defendants request that the Court accept the attachments they have submitted and

---

[1] Defendants also rely upon a declaration by Defendant Varner, which they cite as Exhibit A. However, in the attachments they have submitted to this Court, Exhibit A is a list of grievances filed by Plaintiff. No declaration by Defendant Varner is attached to either their motion or their brief. See Document # 17, # 18.

9

convert their motion into one for summary judgment.[2] Document # 18 at 7 n.1.

Plaintiff objects to Defendants' request. He asserts that he will be able to prove that he has properly and fully pursued all available administrative remedies if he is able to conduct discovery on the issue and then respond to the Defendants' exhaustion argument. Document # 21 at 3-16. Accordingly, the Court will not convert Defendants' motion into one for summary judgment. Their exhaustion argument is premature at this time and Defendant Henry (the only remaining defendant) may raise it in a motion for summary judgment. Accordingly, Defendants' motion to dismiss based on failure to exhaust should be denied.

### 3. Sovereign immunity

Next, Defendants argue that Plaintiff cannot sue them in their official capacities for monetary relief because they are immune from such suit under the Eleventh Amendment. See, e.g., Edelman v. Jordan, 415 U.S. 651, 662-63 (1974); United States v. Commonwealth of Pennsylvania, 902 F.Supp. 565, 579 n.4 (W.D. Pa. 1995).[3] Plaintiff responds to this argument by stating that he is not suing them in their official capacities for monetary damages. Document # 21 at 14-16. Rather, he is suing them in their official capacities for injunctive relief. See Koslow v. Commonwealth, 302 F.3d 161, 178 (3d Cir. 2002) (prison officials sued in their official capacity are not barred by the Eleventh Amendment for prospective relief); Tristani v. Richman, 609 F.Supp.2d 423, 487 (W.D. Pa. 2009) ("Eleventh Amendment does not bar

---

[2] Alternatively, Defendants argue that the Court may consider the attached documents in connection with their Rule 12(b)(6) motion because they are "indisputably authentic." Document #18 at 7 n.1. In the appropriate case a district court may consider indisputably authentic documents related to a plaintiff's grievances without converting a motion to dismiss into a motion for summary judgment. See, e.g., Montgomery v. Derose, Docket No. 08-cv-2021, 2009 WL 2594079 at *1 (M.D. Pa. Aug. 20, 2009), citing Spruill v. Gillis, 372 F.3d 218, 230 (3d Cir. 2004), Brown v. Croak, 312 F.3d 109, 111 (3d Cir. 2002) ("In appropriate cases, failure to exhaust may be raised as the basis for a motion to dismiss), and Ray v. Kertes, 285 F.3d 287, 293 n.5 (3d Cir. 2002) (motions to dismiss may be pursued on failure to exhaust grounds in certain circumstances). The Court will not do so here. As explained in footnote 1, Defendants' own attachments are incomplete.

[3] Defendants also argue that they are immune from any state law claims based on the doctrine of sovereign immunity. However, Plaintiff is not raising any state law claims.

official-capacity suits for prospective relief against state officials under Ex Parte Young, 209 U.S. 123 (1908)"). Accordingly, Defendants' motion to dismiss based on the Eleventh Amendment should be denied.

### 4. Due process claim

Plaintiff alleges that Defendant Henry violated his Fourteenth Amendment procedural due process rights because he did not follow the Department of Corrections' policy before reading his outgoing mail. Document # 4 at ¶¶ 21-28, 66. Specifically, Plaintiff alleges that the Department of Corrections' policy as set forth in DC-ADM 803 and 37 Pa.Code § 93.2,[4] required that Defendant Henry receive authorization from the facility manager/designee before reading Plaintiff's outgoing mail, and also required that Plaintiff be notified if his outgoing correspondence to the bank was not being mailed out.[5] Plaintiff contends that because Defendant Henry did not receive proper authorization or provide him with the proper notice, he deprived

---

[4] The Pennsylvania Code contains "[t]hose portions of some Department [of Corrections] directives and policy statements which concern the interaction of Department inmates and employees with the community at large are published. The full text of the directives and other policy statements are maintained in all Department facilities." 37 Pa.Code § 93.1. Section 93.2 of Title 37 of the Pennsylvania Code is regarding inmate correspondence and it sets forth the basic policy that is contained in DC-ADM 803.

[5] The current version of DC-ADM 803 (effective April 28, 2008) provides at Section I.A.8:

> Incoming and outgoing correspondence, other than privileged correspondence, may be opened and inspected if there is reason to believe that the security of the facility may be impaired or this directive is being violated. Incoming and outgoing correspondence, other than privileged correspondence, may be read upon the written order of the Regional Deputy Secretary and reproduced upon written order of the respective Regional Deputy Secretary in accordance with Section 2.A.3.

Section 2.A.3 provides that "outgoing correspondence, other than privileged correspondence, may be read upon the written order of the Facility Manager/designee." See also DC-ADM 803 Section 2.C ("The Facility Manager/designee may authorize monitoring of outgoing non-privileged correspondence when there is reason to believe that it may reveal or discuss illegal or unauthorized activity, in accordance with Subsection A.3 above."). The Department of Corrections' policy also provides that an inmate shall be notified when outgoing mail is being withheld. DC-ADM 803 Section 3.A.2. 37 Pa.Code § 93.2 (d)-(f) sets forth these same policies.

Although two of the events in question occurred prior to the effective date of the current version of DC-ADM 803 (on January 29, 2008, and February 7, 2008), neither party has notified the Court that the prior version of DC-ADM 803 was different in any material respect.

him of a liberty interest without due process of law.[6]

Conducting a procedural due process analysis in this case involves a two step inquiry. The first question to be asked is whether Plaintiff has a protected liberty interest within the contemplation of the Due Process Clause and, if so, the second question to be asked is whether the process afforded to him comported with constitutional requirements. See, e.g., Shoats v. Horn, 213 F.3d 140, 143 (3d Cir. 2000); Burns v. Pennsylvania Dep't of Corr., 544 F.3d 279, 283-84 (3d Cir. 2008) ("In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such interest without due process of law.")(citations omitted).

"A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' see, e.g., Vitek v. Jones, 445 U.S. 480, 493-494 (1980) (liberty interest in avoiding involuntary psychiatric treatment and transfer to mental institution), or it may arise from an expectation or interest created by state laws or policies, see, e.g., Wolff v. McDonnell, 418 U.S. 539, 556-558 (1974) (liberty interest in avoiding withdrawal of state-created system of good-time credits)." Wilkinson v. Austin, 545 U.S. 209, 221-21 (2005) (parallel citations omitted). There is no liberty interest created directly by the Fourteenth Amendment that is implicated here. Nor has Pennsylvania created a liberty interest in the manner suggested by Plaintiff in the Complaint. See Sandin v. Conner, 515 U.S. 472, 484 (1995) (a state government "may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.")(citations omitted); Wilkinson, 545 U.S. at 222 ("a liberty interest in avoiding particular conditions of confinement may arise from

---

[6] Plaintiff does not allege a property deprivation. The mail he addressed to the bank was returned to him. See Document # 4 at ¶¶ 6, 10, 16, 19.

state policies or regulations, subject to the important limitations set forth in Sandin[.]"). The mere existence of a Department of Correction policy regarding the handling of prison mail is not enough to create a liberty interest. See DC-AMD 803 Policy Statement Section VI ("This policy does not create rights in any person nor should it be interpreted or applied in such a manner as to abridge the rights of any individual. This policy should be interpreted to have sufficient flexibility to be consistent with law and to permit the accomplishment of the purpose(s) of the policies of the Department of Corrections."); Pa.Code § 93.2(j) ("This section is not intended and may not be interpreted to create or confer any rights in addition to those created by the United States Constitution, the Pennsylvania Constitution or Federal or State statutes applicable to the Department."). The Supreme Court has observed:

> A liberty interest is of course a substantive [in contrast to a procedural] interest of an individual; it cannot be the right to demand needless formality. Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement.... The State may choose to require procedures for reasons other than protection against deprivation of substantive rights, of course, but in making that choice the State does not create an independent substantive right.

Olim v. Wakinekona, 461 U.S. 238, 250-51 (1983) (internal quotations, citations and footnotes omitted). See also Griffin v. Vaughn, 112 F.3d 703, 708 (3d Cir. 1997) ("The central teaching of Sandin is that a state statute or regulation conferring a right is not alone enough to trigger due process. The state law must confer 'freedom from restraint which ... imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'")(citations omitted); and at 709 n.3 citing Hewitt v. Helms, 459 U.S. 460, 470 (1983)(for the proposition that the "mere fact that Pennsylvania created a careful procedural structure to regulate the use of administrative segregation does not indicate the existence of a protected liberty interest."); Mearin v. Vidonish, 2:08-cv-597, 2009 WL 5166258 at *6 (W.D. Pa. Dec. 29, 2009) citing Hayes v. Muller, Docket No. 96-3420, 1996 WL 583180 at *7 (E.D.Pa. Oct.10, 1996) ("[A] state does not violate an individual's federal constitutional right to procedural due process merely by deviating from its own established procedures.").

Having been deprived of no liberty interest by Defendant Henry's alleged failure to abide by the Department of Corrections' authorization and notice policies, Plaintiff fails to state a

13

procedural due process claim. Accordingly, the motion to dismiss should be granted with respect to that claim.

### D. Plaintiff's Motion For Partial Summary Judgment

Plaintiff moves for summary judgment on the claims that he has made against Defendant Henry. Document # 23. He contends that he is entitled to summary judgment because Defendant Henry has "filed no aswer [sic], response, or denial to [his] retaliatory claims, or [his] claims of Henry obstructing [his] mail" and therefore he has admitted the allegations made in the Complaint. Id. ¶ 1. See also Document # 24.

There is no merit to Plaintiff's motion. In response to Plaintiff's Complaint, Defendant Henry filed the above-discussed motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) in which he argued (along with Defendants Sobina and Varner) that Plaintiff fails to state a claim upon which relief can be granted because his claims are barred by the Eleventh Amendment; fail to sufficiently allege his personal involvement; and, fail to sufficiently allege a due process violation. "A motion asserting [Rule 12(b)(6)'s defense of failure to state a claim upon which relief can be granted] must be made *before pleading*[.]" Fed.R.Civ.P.P. 12(b) (emphasis added). Defendant Henry's responsive pleading is not due until after he has received notice of the Court's denial of his motion to dismiss. See Fed.R.Civ.P. 12(a)(4)(A).

Because Defendant Henry filed a motion to dismiss, he has not missed the deadline for filing a responsive pleading and therefore he has not admitted the allegations against him. Accordingly, Plaintiff's motion for partial summary judgment should be denied.

### III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendants' motion to dismiss [Document # 17] be granted as to Defendants Sobina and Varner and denied as to Defendant Henry. It is further recommended that the Clerk of Courts be directed to terminate

Defendants Sobina and Varner from this action. It is further recommended that Plaintiff's Fourteenth Amendment due process claim be dismissed.

It also is recommended that Plaintiff's motion for partial summary judgment [Document # 23] be denied.

In accordance with Fed.R.Civ.P. 72, the parties are allowed fourteen (14) days from the date of serve to file written objection to this Report and Recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. No extensions of time will be granted. Failure to file timely objections may constitute waiver of appellate rights. See Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: July 14, 2010

cc: The Honorable Sean J. McLaughlin
      United States District Judge