**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

HECTOR HUERTAS,          )
          Plaintiff,     )     **Civil Action No. 09-139 Erie**
                  )
     v.              )     **District Judge Sean J. McLaughlin**
                  )     **Magistrate Judge Susan Paradise Baxter**
DAN HENRY,          )
          Defendant.    )


## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION


**I.**    **RECOMMENDATION**

It is respectfully recommended that Defendant's motion for summary judgment [ECF No. 63] be granted.  The Clerk of Courts should be directed to close this case.


**II.**    **REPORT**

    **A.**    **Relevant Procedural History**

In June 2009, Plaintiff Hector Huertas, a state prisoner who at the time giving rise to this suit was incarcerated at the State Correctional Institution in Albion, Pennsylvania ("SCI-Albion"), commenced this *pro se* civil rights action pursuant to 42 U.S.C. § 1983.  When he was incarcerated at SCI-Albion, Plaintiff was housed in the Restrict Housing Unit ("RHU").

Initially, Plaintiff sued three employees of the Pennsylvania Department of Corrections (the "DOC"):  Raymond J. Sobina, the Superintendent of SCI-Albion; Dorian Varner, the Chief Secretary of Inmate Grievances; and, Dan Henry, the Mailroom Supervisor at SCI-Albion.  In response to the complaint, the originally named Defendants filed a motion to dismiss.  [ECF No. 17].  On August 20, 2010, the Court, upon the undersigned's Report and Recommendation [ECF No. 37], issued an Order in

which Defendants' motion to dismiss was granted in part and denied in part.  All of the claims against Defendants Sobina and Varner were dismissed and the Clerk of Courts was directed to terminate them from this action.  In addition, Plaintiff's Fourteenth Amendment procedural due process claim against Defendant Henry was dismissed.

At the present time, two claims remain in this action against the only remaining defendant, Mailroom Supervisor, Dan Henry.  First, Plaintiff alleges that on three separate occasions (January 29, 2008, February 7, 2008, and August 12, 2008) Defendant opened, read, and returned to him letters that he had written to his bank.  [ECF No. 4, ¶¶ 9-20].  This interference with his mail, Plaintiff claims, constituted a violation of his First Amendment rights.  [Id., ¶ 66].  Second, Plaintiff alleges that in response to his complaints, Defendant unlawfully retaliated against him by interfering with and taking contents from his mail.  [Id., ¶¶ 34-48, 67].

The parties have completed discovery.  On April 12, 2011, Defendant filed the pending Motion For Summary Judgment [ECF No. 63], an accompanying Brief [ECF No. 64], and his Statement Of Undisputed Material Facts [ECF No. 65].  Plaintiff has filed his Disputed Facts In Response To Defendant's Statement Of Undisputed Material Facts [ECF No. 71] and a Brief in Opposition to Defendant's Summary Judgment Motion [ECF No. 71-3 at 4-21].

**B.**     **Standard Of Review**

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims.  Celotex Corp. v. Catrett, 477 U.S. 317,

330 (1986); Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007); UPMC Health System v. Metropolitan Life Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-61 (3d Cir. 1989) (the non-movant must present affirmative evidence – more than a scintilla but less than a preponderance – which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (*i.e.*, depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322. See also Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). The non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." Garcia v. Kimmell, 381 F.App'x 211, 213 (3d Cir. 2010) quoting Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005).

When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). See also El v. SEPTA, 479 F.3d 232, 238 (3d Cir. 2007).

Because Plaintiff is proceeding *pro se*, the court is required to liberally construe his pleadings. Haines v. Kerner, 404 U.S. 519, 520 (1972). Nonetheless, this does not require the Court to credit his "bald assertions" or "legal conclusions." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir.

1997). Thus, for example, the mere allegations that Defendant's conduct was in retaliation for the Plaintiff's exercise of his First Amendment rights is insufficient to establish that there is a genuine issue of material fact. Rather, the allegations must be supported by evidence, which the Court will evaluate under the standard described above to determine if there is merit beyond mere conclusions.

**C.** **Discussion**

    **1.** **The Exhaustion Requirement of the Prison Litigation Reform Act**

Before the Court can evaluate the substance of the evidence before it, it must determine whether Plaintiff exhausted his administrative remedies prior to filing suit. The Prison Litigation Reform Act (the "PLRA"), 42 U.S.C. § 1997e(a), provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal Law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

This exhaustion requirement applies to all inmate suits regardless of whether they refer to general prison conditions or to a particular incident. Porter v. Nussle, 534 U.S. 516 (2002); see also Concepcion v. Morton, 306 F.3d 1347 (3d Cir. 2002) (for history of exhaustion requirement). The exhaustion requirement is not a technicality, rather it is federal law which federal district courts are required to follow. Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) (by using language "no action shall be brought," Congress has "clearly required exhaustion"). "Compliance with prison grievance procedures … is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. 199, 217-18 (2007).

4

The grievance procedures in effect at SCI-Albion during the relevant time are set forth in DC-ADM 804. It requires that an initial grievance be filed within 15 days of the events alleged in the grievance. When an inmate files a grievance he submits such to the Facility Grievance Coordinator (Step 1). When an initial grievance is received, it is assigned a number. That number appears in the space provided on the upper right hand corner of the grievance. [ECF No. 63-5 at 2-3, Def's Ex. 2, Varner Decl., ¶¶ 3-6].

Once the inmate has complied with all of the procedural requirements and a grievance has received Initial Review, an inmate can file an appeal from this Initial Review to the Superintendent of the inmate's respective Institution (Step 2). When an inmate has received a disposition of his appeal to the Superintendent, the inmate may appeal to the Secretary's Office of Inmate Grievances and Appeals and seek Final Review (Step 3). In order to effectuate Final Review, an inmate must include with his paperwork the Initial Grievance, the Initial Review determination, the appeal to the Superintendent, and the Superintendent's response back to the inmate and the appeal to Final Review. [Id., ¶¶ 7-8]. The Secretary's Office of Inmate Grievances and Appeals is to issue a decision within 30 working days after receipt of an appeal. [ECF No. 71-1 at 13, Pl's Ex. 1, DC-ADM 804].

### 2 Did Plaintiff Exhaust His Claims Against Defendant?

Defendant alleges that he is entitled to summary judgment because Plaintiff has failed to exhaust administrative remedies against him. Plaintiff's claims are regarding conduct that occurred beginning on January 29, 2008 (which is the first date upon which Plaintiff claims that Defendant opened, read, and returned to him letters that he had written to his bank). The undisputed record before the Court shows that, from January 2008 forward, Plaintiff filed a total of six grievances at SCI-Albion that were exhausted by being appealed to final review. Those grievances were numbered 241376, 241567,

256580, 264788, 268050 and 268982.  [ECF No. 63-5 at 4, Def's Ex. 2, Varner Decl. ¶ 10].  Plaintiff acknowledges that out of those six grievances, the following three are not relevant to either claim remaining in this action:  Grievance Nos. 268050, 241376, and 264788.  [ECF No. 71, ¶¶ 2, 8, 11].  Out of the remaining three grievances that are relevant to this action, Grievance No. 241567 [ECF No. 63-5 at 17-31, Def's Ex. 6] is regarding Plaintiff's First Amendment allegations and the alleged interference with his correspondence with Marquette Savings Bank.  Grievance No. 256580 [ECF No. 63-6 at 1-9, Def's Ex. 7] is regarding the allegations he makes in his Retaliation claim.

Defendant contends that Plaintiff did not exhaust his claims *against him* because Plaintiff did not specifically name him in the grievances as having violated his rights as claimed in the Complaint.  He points out that in Grievance No. 241567, Plaintiff complains generally about "SCI-Albion's staff" opening his outgoing mail in violation of his First Amendment rights.  He does not mention Defendant in the grievance itself.  [See ECF No. 63-5 at 30-31, Def's Ex. 6].  The only point in which Defendant's name is mentioned is in one of the five documents that Plaintiff appended to the grievance.  In that document, which is a "Request To Staff Member" addressed to Defendant and which was appended to the grievance as Attachment D, Plaintiff wrote: "It is obvious that your personnel has taken it upon themselves to open may [sic] mail, refrain from sending it to the approved mailing address, and has in fact gone inside my mail, read it, and with bold disregard to policy and law – answered my mail."  [ECF No. 63-5 at 25, Def's Ex. 6 (emphasis in original)].  Thus, it is true that Defendant is mentioned in that document as someone *to whom* Plaintiff had complained, not someone *about whom* Plaintiff had complained.  The same can be said about Grievance No. 256580 (the Retaliation grievance), where Defendant is referred to by his title of "mailroom supervisor."  [ECF No. 63-6 at 6, Def's Ex. 7].  There too, Defendant is referred to as someone *to whom* Plaintiff had complained.

Plaintiff does not dispute Defendant's contention that he did not specifically complain of any wrongdoing on Defendant's part during the administrative grievance process. [See ECF No. 71-3 at 7-9]. Plaintiff asserts, however, that he did not have to specifically accuse Defendant of any wrongdoing in order to exhaust his claims against Defendant, and that all was required was that he name Defendant in the grievance. [Id.] In support, he directs the Court to the rules governing the prison's grievance system, which he contends does not require that he specifically accuse Defendant. Plaintiff quotes from the portion of DC-ADM 804 that details, in relevant part, what must and should be included in a grievance:

> The inmate **will include a statement of the facts relevant to the claim…. The inmate will identify any person(s) who may have information that could be helpful in resolving the grievance**. In Section B of the DC-804, Part 1, the inmate **should also include information on attempts to resolve the matter informally**. The inmate will also specifically state any claims he/she wishes to make concerning violation of Department directives, regulations, courts orders, or other law.

[ECF No. 71-1 at 6-7, Pl's Ex. 1, DC-ADM 804, VI.A.7 (emphasis added)].

Under the circumstances, the Court agrees with Plaintiff that by documenting in his grievance that he had complained to Defendant about the handling of his mail in the mailroom, Plaintiff identified Defendant as a person "who may have information that could be helpful in resolving the grievance[s]," as required by DC-ADM 804. That was sufficient to exhaust his claims against Defendant. To the extent that Defendant's identity is a "fact[ ] relevant to the claim" – and it is – it was mandatory for Plaintiff to include it somewhere in his grievances. He did. To the extent that Defendant was a "person[] who may have information" or someone with whom Plaintiff made "attempts to resolve the matter informally" – and he was – Plaintiff was required to identify Defendant if practical. He did.

Defendant does not direct the Court to any case which would support a contrary conclusion. In each of the cases cited by him, the plaintiff failed to mention the defendant at issue *at all* in his

7

grievances, whereas in this case Plaintiff did identify Defendant. <u>Compare</u> <u>Spruill v. Gillis</u>, 372 F.3d 218, 234 (3d Cir. 2004) (dismissing one defendant because the plaintiff did not identify him anywhere in the grievance).


### 3    Is Defendant Entitled To Summary Judgment?

In order to state a claim for relief under 42 U.S.C. § 1983, "a plaintiff must demonstrate the defendant, acting under color of state law, deprived him or her of a right secured by the Constitution or the laws of the United States." <u>Kaucher v. County of Bucks</u>, 455 F.3d 418, 423 (3d Cir. 2006). That Defendant is a state actor is obvious, and the issue pending before the Court is whether there was a deprivation of Plaintiff's constitutional rights. But first, the Court must consider another predicative issue: whether Defendant is properly the subject of Plaintiff's claims based on his personal involvement in the events underlying the Complaint?

When a supervisory official such as Defendant (SCI-Albion's Mailroom Supervisor) is sued in a civil rights action, liability can only be imposed if that official played an "affirmative part" in the complained-of misconduct. <u>Chinchello v. Fenton</u>, 805 F.2d 126, 133 (3d Cir. 1986). Although a supervisor cannot encourage constitutional violations, he or she has "no affirmative constitutional duty to train, supervise or discipline so as to prevent such conduct." <u>Id.</u> The supervisor must be personally involved in the alleged misconduct. <u>Evancho v. Fisher</u>, 423 F.3d 347, 353 (3d Cir. 2005) ("Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."). Importantly, § 1983 liability cannot be predicated solely on *respondeat superior*. <u>Id.</u> at 353, quoting <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988).

Defendant argues that there is no material issue of fact as to whether he played an affirmative part in any of the complained-of conduct. He has attached Plaintiff's deposition testimony [ECF No. 63-

8

2 through 4, Def's Exs. 1A-1C] and points out that Plaintiff's own concessions show that, as a prisoner in the RHU during the relevant time period, he had no knowledge of what actually took place in the mailroom on the occasions that he alleges Defendant violated his rights. Similarly, Defendant contends, Plaintiff can produce no evidence that Defendant ever directed any of his subordinates to violate his rights or with prior knowledge acquiesced in the violation of Plaintiff's rights by a subordinate.

Defendant explains that Plaintiff admitted to facts amounting to a broad concession at his deposition that, as a prisoner in the RHU, he had no direct, personal knowledge of mailroom procedures. Rather, he described RHU mail procedures (both generally and as they apply to his allegations) only from the extremely limited perspective of an RHU prisoner, which is to say that he had no knowledge of what happened to his outgoing mail from the time it left his hands. For example, he stated that, in the RHU, inmates give mail to the corrections officers. [Pl's Dep. at 16]. Corrections officers then place the RHU mail in a locked box. [Id. at 51]. A staff member from the mailroom comes to the RHU, picks up the mail and delivers it to the mailroom. [Id. at 16]. From the point at which the mail leaves his (or any other RHU prisoner's) hands, Plaintiff has no personal knowledge of procedures or events in the mailroom. He has no witness testimony that Defendant touched his mail, his photographs, or any of his possessions. [Id. at 131].

As to the specific dates on which Plaintiff claims that his outgoing mail to Marquette Savings Bank was interfered with in violation of his First Amendment rights, Defendant demonstrates that Plaintiff's deposition testimony showed as follows. Regarding his first letter to the bank, dated January 29, 2008, Plaintiff conceded that he does not know who came from the mailroom to pick up the RHU mail on January 29, 2008, and specifically does not know whether it was Defendant. [Id. at 17-18, 50]. Plaintiff did not see Defendant open his mail or read his letter. [Id. at 21]. Indeed, Plaintiff did not see Defendant do anything with respect to his mail on January 29, 2008. [Id. at 37]. Moreover, Plaintiff

knows of no witnesses who will testify that Defendant opened his correspondence of January 29, 2008, without approval, read it or returned it to him.  [Id.]

Plaintiff also alleges that he wrote two additional letters to Marquette Savings Bank: one on February 7, 2008, and another on August 12, 2008.  However, Defendant points out, Plaintiff testified at his deposition that he does not know which corrections officer received the letters from him and took them to the RHU mailbox.  He did not witness anything that happened to the letters after they were taken by the corrections officer.  [Id. at 62-63].  Plaintiff did not observe Defendant touch the letters.  He did not observe him return the letters.  [Id. at 57-65].

Turning next to Plaintiff's other claim, he contends that Defendant retaliated against him for filing grievances by mishandling various correspondence and/or removing the contents of various correspondence.  Defendant contends that Plaintiff's deposition testimony shows that there is no evidence whatsoever that he had any personal contact with Plaintiff's incoming or outgoing correspondence, and therefore, no evidence that he committed any act of retaliation.

Plaintiff also claims that he interfered with correspondence between him and Tightwad magazine.  During his deposition, however, Plaintiff testified that he does not know what happened to a letter that he claims he did not receive from the magazine.  [Id. at 81].  Specifically, he did not see the letter arrive at the institution and did not see the letter arrive at the mailroom.  [Id. at 82].

Plaintiff also claims that Defendant interfered with his correspondence with an organization called Friends Beyond the Wall, specifically, one incoming and one outgoing letter.  However, Plaintiff testified that he never saw anyone in the mailroom mishandle either the incoming or the outgoing letter.  [Id. at 85].  Furthermore, Plaintiff does not know what happened to either the incoming or the outgoing letters when they were in the custody of the U.S. Postal Service.  Plaintiff does not know whether Defendant ever touched the letter.  [Id. at 85-86].

10

Plaintiff also contends that Defendant interfered with correspondence between him and his friend Jemma Luna from London, England. [Id. at 86-87]. He claims that a letter from her never arrived. Plaintiff asserts that the letter was deposited in the United Kingdom's postal service. However, he concedes that the letter could have been lost in the mail. Furthermore, Plaintiff does not know who in the mailroom may have touched the letter. He has no idea who was responsible for the photos from Jemma Luna allegedly not arriving. Finally, Plaintiff does not have any evidence that Defendant touched any of the "other letters" that he alleges were mishandled. [Id. at 89-93].

Plaintiff also alleges that Defendant retaliated against him specifically by taking pictures that were sent to him by family and friends. [Id. at 119-20]. However, Plaintiff did not witness Defendant take his pictures. Plaintiff never saw Defendant do anything with respect to his pictures. Indeed, Plaintiff does not know who in the mailroom may have touched his pictures. [Id. at 106-07]. He does not know whether the Post Office was responsible for letters arriving with photos falling out. [Id. at 101].

Plaintiff also alleges that funds sent to him by family members were returned to them by Defendant. However, Plaintiff cannot remember when this allegedly happened. [Id. at 112]. He cannot remember what amount of money was allegedly returned to his family. He cannot remember with any certainty which family members sent or received the funds, or recall the date on which these alleged events would have occurred. [Id. at 115-17].

By presenting the above-cited testimony to the Court, Defendant has satisfied his initial burden of proving the absence of evidence supporting Plaintiff's claims. The burden now shifts to Plaintiff to come forward with specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e). He admits that "there is no smoking gun where [he] can say that he saw Def. Henry interfering with [his] mail, or that Henry was observed by a witness … interfering with [his] mail." [ECF No. 71, ¶ 22]. He claims,

however, that the "circumstantial evidence [is] sufficient to draw the inference" that Defendant is the one who allegedly repeatedly interfered with his mail. [Id.]

The primary "circumstantial evidence" upon which Plaintiff relies are two statements made by Defendant. The first statement was made by him in his Response to an Inmate's Request To Staff Member he provided to Plaintiff on November 7, 2006 (more than one year before the complained-of conduct began). [ECF No. 71-1 at 20-22, Pl's Ex. 5]. Plaintiff had complained about the amount of time it took for his mail to arrive at the addressed destination. Defendant wrote in response:

> We have no control over how long it takes for mail to reach its destination. We simply apply the postage and hand it over to the Postal Service. **I inspect RHU mail and you receive more mail than any other inmate down there.**

[Id. at 21 (emphasis added)]. On another occasion in October 2007, Defendant walked by Plaintiff and Plaintiff mentioned to him an unrelated complaint about his legal mail. Defendant told him that he could not talk about the complaint at that time and that Plaintiff should write to him because he "handles the RHU mail." [Pl's Dep. at 32].

Neither of the above-cited statements creates a material issue of fact as to whether Defendant mishandled Plaintiff's mail on any of the much later dates in question. Plaintiff has not produced any evidence to show that Defendant was the only individual who inspected RHU mail and therefore the fact that he stated generally that he inspected RHU mail in November 2006 and October 2007 does not create an issue of fact as to whether he was an individual who interfered with Plaintiff's mail several months and even years later, as alleged by Plaintiff. In fact, Plaintiff's evidence establishes that "[a]ll mailroom staff process RHU mail." [ECF No. 71-1 at 39, ¶¶ 5-7, Pl's Ex. 8]. They follow a rotating schedule of specific job duties on a weekly basis. [ECF No. 71-2 at 3, ¶ 1, Pl's Ex. 11; ECF No. 71-2 at 10, ¶ 7, Pl's Ex. 12].

Moreover, it is undisputed that Defendant's job in the mailroom is a supervisory one. [ECF No. 71-1 at 33, ¶¶ 7-8, Pl's Ex. 7]. That is why Defendant told Plaintiff that if he had a complaint about the way his staff is handling the mail, Plaintiff should submit a complaint in writing to him. That is also why Defendant had some familiarity with the volume of Plaintiff's in-coming and out-going mail and issues related thereto. For that same reason, the Court is not persuaded by Plaintiff's insistence that a factfinder could reasonably infer that Defendant committed the alleged misconduct because he had knowledge about how Plaintiff's mail was handled. [See ECF NO. 71 at 3-7; ECF No. 71-3 at 10-12].

In sum, Plaintiff has produced no competent evidence that Defendant ever interfered with his correspondence with Marquette Savings Bank in violation of his First Amendment rights. Likewise, Plaintiff has not produced any competent evidence that Defendant retaliated against him for filing grievances or complaints of any kind. At most, Plaintiff is attempting to attach liability to Defendant because he was the supervisor of the mailroom. But Plaintiff must produce sufficient evidence from which the factfinder could conclude that Defendant was personally involved in the alleged misconduct because § 1983 liability cannot be predicated solely on *respondeat superior*. Evancho, 423 F.3d at 353. Plaintiff has not met his burden. There is no evidence suggesting that Defendant did anything except what was required by and appropriate for his job in responding to Plaintiff's complaints and grievances. Therefore, Defendant Henry is entitled to summary judgment in his favor on both of Plaintiff's claims.

## III.    CONCLUSION

For the foregoing reasons, it is respectfully that recommended that Defendant's Motion For Summary Judgment [ECF No. 63] be granted. The Clerk of Courts should be directed to close this case.

Pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, the parties are allowed to file objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to do so will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n.7 (3d Cir. 2011).


/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: July 27, 2011

14